GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for Respondent
By:     JEAN-DAVID BARNEA
        JESSICA JEAN HU
        ALLISON ROVNER
        Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2679/2726/2691
Facsimile:  (212) 637-2686
E-mail: jean-david.barnea@usdoj.gov
        jessica.hu@usdoj.gov
        allison.rovner@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CESAR FERNANDEZ-RODRIGUEZ, ROBER GALVEZ-CHIMBO, SHARON HATCHER, JONATHAN MEDINA, and JAMES WOODSON, individually and on behalf of all others similarly situated, <br><br> Petitioners, <br><br> v. <br><br> MARTI LICON-VITALE, in her official capacity as Warden of the Metropolitan Correctional Center, <br><br> Respondent. | No. 20 Civ. 3315 (ER) |

**DECLARATION OF PATRICK MCFARLAND**

**I.  Introduction**

1.  I am the Residential Reentry Manager of the New York Residential Reentry Management Office ("NY RRM") for the Bureau of Prisons ("BOP").  I have held this position since October 2015.

2.  Prior to holding this position, I was Assistant Case Management Coordinator at BOP's Metropolitan Detention Center in Brooklyn, New York. I have been employed by the BOP for nearly 19 years, and, in that time, in addition to my last two positions, I have also worked as a case manager and correctional officer.

3.  BOP's Residential Reentry Management ("RRM") division is responsible for placing federal inmates who are released from incarceration into community-based facilities and programs, including, but not limited to, home confinement and Residential Reentry Centers ("RRC") (commonly referred to as "halfway houses").

4.  NY RRM handles the placement of inmates sentenced in the District of Connecticut, the District of New Jersey, and the Southern and Eastern Districts of New York, as well as inmates nationwide who, though sentenced in another District, seek relocation, supervision, and final placement within these Districts.

5.  As part of my duties and responsibilities, I supervise three Residential Reentry Specialists, who are responsible for finalizing placements for inmates within our office's jurisdiction. My immediate supervisor is Tracy Rivers, Assistant Eastern Sector Administrator, who is based in BOP's central office in Washington, D.C.

6.  I submit this declaration in connection with the opposition to petitioners' motion for a preliminary injunction in this case. I base this declaration on my personal knowledge, my review of BOP records to which I have access as part of my duties and responsibilities, and my communications with other BOP employees with whom I work.

## II. The BOP Placement Process

7.  The placement of a federal inmate into home confinement or an RRC begins at the BOP facility at which the inmate is serving their sentence. Case management staff at the facility review inmates' files to determine whether they are eligible to complete the remainder of

their sentence in a community-based location.  As part of that process, BOP facility staff may contact the United States Probation and Parole Office ("Probation") to elicit its feedback with respect to the inmate.  Once a BOP facility completes its review, and its Warden approves the placement referral, the facility's case management staff submits the referral to NY RRM electronically.

8. Upon its receipt of a referral package, RRM reviews the materials submitted to ensure the referral package is complete and complies with BOP rules, as well as to determine what available placements may be required to support the inmate, to ascertain what resources may be available in the relevant community, and to ensure that the inmate's release would not pose a threat to public safety.

9. The referral package must include the referring facility's assessment of the degree of transitional support the inmate will require to return to the community, based on the inmate's individual circumstances and public safety considerations.  NY RRM considers these factors as it seeks to identify a placement for the inmate.  If RRM agrees with the referring facility's recommendation, it inquires with available community-based organizations (which contract with BOP) as to whether they can provide residential reentry services for the inmate in home confinement or in an RRC.

10. Because inmates released from a BOP facility to home confinement or an RRC no longer have access to case management services through their prison facility, they must be assigned a community-based case manager.  Case management services are the keystone of inmates release plans, and they are integral to ensuring that inmates successfully reintegrate to society following their release.  Under BOP policies and guidance, following an inmate's release, case managers must meet with the inmate regularly for progress reviews.  Such reviews are the

basis for assessing the inmate's readiness to move forward with various aspects of release planning, and are the mechanism through which the inmate is provided services such as: financial programming, job counseling, housing sponsorship, referral to substance treatment, and referral to mental health services. Without adequate case management, inmates' likelihood of successfully reintegrating to community life is low and their likelihood of recidivism is high.

11. Once RRM has requested placement for an inmate, it must await responses from community-based organizations who contract with BOP to provide case management services to inmates in home confinement or RRCs. With respect to home confinement referrals, the contractor must also conduct a home visit to ensure the suitability of the inmate's proposed residence.

12. Once a contractor accepts RRM's request for placement, it must agree to a date on which it will accept responsibility for the inmate. This date is contingent on bed availability in the case of an RRC, and on staffing capacity in the case of home confinement.

### III. NY RRM Placements During the COVID-19 Pandemic

13. Pursuant to guidance recently issued by the Attorney General and BOP, there is now a lower threshold in terms of the percentage of the sentence that inmates must have already served to be considered for home confinement. In light of this change, and since the beginning of the COVID-19 pandemic, referrals to NY RRM have increased.

14. In the face of this increased workload, RRM is doing everything in its power to support BOP in this unprecedented time. Facilitating the release of eligible inmates from BOP facilities as part of the agency's COVID-19 response is an utmost priority for RRM, and RRM staff have been processing incoming referrals as expeditiously as possible and working with contractors to ensure that eligible inmates can be placed without any unnecessary delay.

15. As it completes its work, however, RRM remains necessarily constrained by the availability of community resources. As discussed above, inmates cannot be placed in RRC or on home detention without identifying contractors who agree to supervise them and have available space to house them if needed. Although NY RRM has yet to encounter this issue, contractors in other regions have advised RRMs they lack the capacity to accept new referrals.

16. The day-to-day work of RRM and contractors has also been impacted during the pandemic, requiring contractors to adopt new policies and procedures. For example, in light of stay-at-home rules in New York and elsewhere, BOP and community providers have had to redesign the policies for home visits.

### IV. Impact of Proposed Relief on RRM Operations

17. I have reviewed paragraphs 20 through 26 of Petitioners' request for relief in their preliminary injunction motion (Appendix A to Petitioners' Notice of Motion). These requests do not appear to take into account that inmates referred to home confinement or RRC by the MCC are actually placed by NY RRM, and that NY RRM places inmates from many BOP facilities other than MCC.

18. Moreover, BOP has updated its guidance regarding eligibility for home confinement several times over the past few months. BOP's Central Office, in Washington, D.C., creates all policy and guidance within BOP. If MCC was ordered by the court to create its own policies, this would go against the BOP's current policies and practices.

19. Further, I wish to reiterate that inmates cannot be placed with a community-based facility unless and until those facilities indicate they have space available for the inmates.

20. Since the COVID-19 pandemic began, BOP and its community partners have been doing their utmost to expedite the process of releasing eligible inmates into the community. Currently, the BOP has more inmates housed on home confinement than are currently housed

within RRC facilities, which is unprecedented in the history of the agency.  My office is committed to continuing this important work, but must do so within the parameters specified by law, regulation, and agency guidance.

I, PATRICK MCFARLAND, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the above statements are true and correct.

Dated: New York, New York
       May 29, 2020

                                                 */s/ Patrick Mcfarland   (by JJH)*
                                                 PATRICK MCFARLAND
                                                 Residential Reentry Manager
                                                 New York Residential Reentry Management Office