# MEMO ENDORSED

## COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1000

**By ECF and Electronic Mail**          August 31, 2020

The Honorable Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, N.Y. 10007

      Re:   *Fernandez-Rodriguez et al. v. Licon-Vitale*, No. 20 Civ. 3315 (ER)

Dear Judge Ramos:

      We write to apprise the Court of our concerns over the adequacy and completeness of Respondent's bi-weekly reports to the Court and, more broadly, of the MCC's handling of a new and apparently ongoing COVID-19 outbreak within the facility. We respectfully request that the Court set a conference at which Respondent can address these issues and the Court can consider what relief is appropriate.

      Since the completion of the parties' preliminary injunction briefing in late May, the MCC has faced a new outbreak of the virus. During this time, the number of inmates who tested positive has increased over seven-fold, from 5 to 37.[1] As confirmed by MCC bulletins and inmate reports, at the time of their test results, these inmates were housed in at least five different units across the prison, including the open dormitories on 11 South that house as many as 156 inmates.[2]

      Unfortunately, the MCC's response to this rise in cases is troublingly familiar. Staff response times for sick calls are poor,[3] a fact confirmed by Respondent's acknowledgment earlier this month that "electronic cop outs have not been diligently reviewed by medical staff."[4] Inmates report going weeks or even months without a temperature check or symptom screening, even in

---

[1] *Compare* Letter from Respondent to Chief Judge Roslynn R. Mauskopf (Aug. 27, 2020), https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200827_032723.pdf *with* Letter from Respondent a to Chief Judge Roslynn R. Mauskopf (June 2, 2020), https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200603_013452.pdf.

[2] *See* Ex. A, MCC Bulletins, at 1 (Unit 5 South), 2 (Unit 11 North), 3 (11 South) and 7 (the SHU); *see also*, Ex. B, Karimbux Decl., at ¶ 12 (confirming that bulletins have indicated positive tests in at least Units 5 South, 9 North, 11 North and 11 South).

[3] Ex. C, Fernandez-Rodriguez Decl., at ¶¶ 4-6; Ex. D, Hatcher Decl., at ¶ 7; Ex. B, Karimbux Decl., at ¶¶ 4, 11; Ex. E, Schiliro Decl., at ¶ 11; and Ex. F, Schaefer Decl., at ¶ 13.

[4] Letter from Respondent to the Court, ECF No. 93 at 2 (Aug. 5, 2020).

COVINGTON

quarantined units with recent positive cases.[5] When screenings do occur, they consist in at least some cases of merely asking a group of inmates "[i]s everyone OK?"[6] Inmates who were isolated due to positive COVID-19 tests are being returned to regular housing without a negative test, medical screening, or even the expiration of the 14-day quarantine period.[7] All the while, the MCC continues to use the punitive Special Housing Unit for isolation purposes.[8]

These facts are especially troubling because they continue to cast doubt on the accuracy of Respondent's prior representations to this Court in both the Warden's letter to the Court filed in opposition to the Preliminary Injunction motion (the "May 29 Letter") and the bi-weekly reports she has issued thereafter. For example, while Petitioners appreciate Respondent's decision to audit the performance of response times to electronic sick call requests,[9] it is nevertheless concerning that the results of this audit contradict Respondent's assertions in four prior letters.[10] And these delays still do not appear to have been addressed. In fact, declarants report that "[t]he MCC is still very slow in responding to medical requests,"[11] including months-long waits for responses to sick call requests or doctor-ordered medical tests.[12] Likewise, the Warden's continued representations that "[a]ll positive inmates have been asymptomatic" is questionable. At least one inmate testing positive has reported that he not only had symptoms of COVID-19 but also continues to suffer such symptoms.[13]

The infrequent medical screening likewise does not live up to Respondent's previous assertions. In her May 29 letter, Respondent described the schedule for medical screening as twice a day for isolated inmates, once a day for quarantined inmates, twice a week for inmates on 11 South, and once a week for all other inmates.[14] The MCC has failed to meet that schedule on each front. As described in their respective declarations, Chris Karimbux and Pedro Vicioso-Lima were not screened twice a day while in isolation.[15] Additionally, neither Karimbux, Joseph Schiliro or Alan Schaefer were consistently screened while housed in quarantined units, including 9 North

---

[5] Ex. C, Fernandez-Rodriguez Decl., at ¶ 9; Ex. D, Hatcher Decl., at ¶ 6; Ex. B, Karimbux Decl., at ¶¶ 10, 13; Ex. E, Schiliro Decl., at ¶ 10; Ex. F, Schaefer Decl., at ¶ 11; and Ex. G, Vicioso-Lima Decl., at ¶ 9.

[6] Ex. E, Schiliro Decl., at ¶ 10.

[7] Ex. B, Karimbux Decl., at ¶ 8; Ex. G, Vicioso-Lima Decl., at ¶¶ 5-6.

[8] Letter from Respondent to the Court, ECF No. 94 at 2 (Aug. 14, 2020).

[9] Letter from Respondent to the Court, ECF No. 93 at 2 (Aug. 5, 2020).

[10] Letter from Respondent to the Court, ECF No. 60.1 at 3-4 (May 29, 2020); Letter from Respondent to the Court, ECF No. 86 at 1 (June 19, 2020); Letter from Respondent to the Court, ECF No. 88 at 2 (July 2, 2020); and Letter from Respondent to the Court, ECF No. 91 at 1 (July 17, 2020).

[11] Ex. D, Hatcher Decl., at ¶ 7.

[12] Ex. C, Fernandez-Rodriguez Decl., at ¶¶ 4-5.

[13] Ex. G, Vicioso-Lima Decl., at ¶¶ 3, 8.

[14] Letter from Respondent to the Court, ECF No. 60.1 at 6 (May 29, 2020).

[15] Ex. B, Karimbux Decl., at ¶ 9; Ex. G, Vicioso-Lima Decl., at ¶ 4.

**COVINGTON**

and 11 South.[16] Sharon Hatcher has not had her temperature taken or otherwise been screened in weeks[17] and Cesar Fernandez-Rodriguez has not had his temperature taken since the beginning of May.[18] The lackadaisical nature of the screening, when it takes place at all, also contradicts Respondent's prior assurances. Respondent told this Court that "medical staff hav[e] been explicitly directed to ask inmates about all possible symptoms,"[19] and included a letter to MCC staff in her preliminary injunction papers, instructing them that "it is not sufficient to ask how inmates are feeling."[20] Nonetheless, as Joseph Schiliro recounts in his declaration, symptom screening currently amounts to a nurse asking the entire dorm at one time, "Is everyone OK?"[21] Similarly, Respondent's representation that she implemented BOP testing protocols, which call for "inmates being released from isolation [to be] tested twice,"[22] is undercut by two inmates' reports that they were released from isolation without *any* negative test or symptom screening.[23]

Finally, Petitioners remain deeply concerned by Respondent's continued use of the SHU to isolate sick inmates, which she has done without any indication that it is in fact "only…a last resort"[24] or that she has taken any steps to make the unit's notorious conditions (including concrete "beds" with no mattresses or bedding) even minimally comfortable.

Given these continued shortcomings in the MCC's pandemic response, Petitioners' counsel contacted Respondent's counsel on August 18 to request that the Warden supplement her bi-weekly reports with additional information that is necessary to more fully understand the conditions at the facility.[25] Petitioners proposed that Respondent provide additional information with respect to the MCC's efforts to improve its sick-call monitoring system (*e.g.*, the number of pending sick call requests). In addition, Petitioners requested that Respondent provide further details on what steps the MCC has taken to conduct contact tracing; break out information on release-related requests by the type of release so that Petitioners can determine whether the MCC is faithfully implementing BOP guidance; and provide information regarding compliance with protocols on temperature checks, symptom screening, isolation, and quarantine. While Petitioners believe that these requests are reasonable and minimally burdensome, Respondent has thus far declined to provide any of this information.

As the above reflects, there are troubling signs that the MCC has fallen short of the commitments the Warden made in opposing the issuance of a Preliminary Injunction. The limited

---

[16] Ex. B, Karimbux Decl., at ¶¶ 10, 13; Ex. E, Schiliro Decl., at ¶ 10; and Ex. F, Schaefer Decl., at ¶ 11.

[17] Ex. D, Hatcher Decl., at ¶ 6.

[18] Ex. C, Fernandez-Rodriguez Decl., at ¶ 9.

[19] Letter from Respondent to the Court, ECF No. 60.1 at 3 (May 29, 2020).

[20] Letter from Respondent to MCC Staff, ECF No. 60.2 at 2.

[21] Ex. E, Schiliro Decl., at ¶ 10.

[22] Resp. Opp., ECF No. 59, at 10-11; *see also* Letter from Respondent to Chief Judge Roslynn R. Mauskopf at 2 (Aug. 13, 2020), https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200814_074426.pdf.

[23] Ex. B, Karimbux Decl., at ¶ 8; Ex. G, Vicioso-Lima Decl., at ¶¶ 5-6.

[24] Letter from Respondent to the Court, ECF No. 60.1 at 6 (May 29, 2020).

[25] The requested additional information is attached to this letter as Exhibit H.

**COVINGTON**

voluntary bi-weekly submissions from the Respondent fail to provide information sufficient to determine how the MCC is responding to the current COVID-19 outbreak, and appear to contain inaccuracies. Accordingly, Petitioners respectfully ask that the Court schedule a conference at which Respondent can provide further information about the MCC's response to the current COVID-19 outbreak. At the conference, the Court may also consider whether it is appropriate to convert Respondent's voluntary reports into court-ordered reports, and whether these reports should include the additional information suggested by Petitioners or any other information the Court deems appropriate. This Court has the authority to issue such an order and, for the foregoing reasons, such an order is warranted at this time. *See, e.g.*, *Budanio v. Saipan Marine Tours, Inc.*, 22 F. App'x 708, 711 (9th Cir. 2001) (unpublished) (district court acted "well within its [inherent] authority in ordering Defendants to disclose . . . information" that was "discoverable and relevant"); *Wilson v. Williams*, No. 20-cv-794 (JG) (N.D. Ohio May 14, 2020) (non-document Order) (directing warden to file daily reports on COVID-19 testing data); *see also Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 203–04 (D.D.C. 2016) (collecting cases, in FOIA fee-shifting context, involving "administrative orders that a court might issue to aid in its determination" of the merits).

We thank the Court for its consideration of these matters.

Respectfully submitted,

s/ *Arlo Devlin-Brown*
Arlo Devlin-Brown
Andrew A. Ruffino
Alan Vinegrad
Timothy C. Sprague

cc: Counsel for Respondent (by ECF and electronic mail)

---

The warden is directed to submit a reply of no more than four pages by September 4, 2020.

SO ORDERED.

_____
Edgardo Ramos, U.S.D.J
Dated: __Sept. 1, 2020__
New York, New York

4